**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**BEIERSDORF, Inc., et al.,**

                Plaintiffs,

    -vs-                                     **Case No. 07-C-888**

**INTERNATIONAL OUTSOURCING
SERVICES, LLC, THOMAS BALSIGER,
BRUCE A. FURR, STEVEN A. FURR,
LANCE A. FURR, WILLIAM L. BABBLER,
OVIDIO H. ENRIQUEZ, DAVID J. HOWARD,
JAMES C. CURREY, HOWARD R. McKAY,**

                Defendants.

---

## DECISION AND ORDER

---

        International Outsourcing Services, LLC ("IOS") is a company that acts as a clearinghouse in the coupon redemption process. IOS receives coupons from retailer clients, processes the coupons, then forwards them to the pertinent manufacturer (or redemption agent) for reimbursement. In March 2007, a Grand Jury Indictment charged IOS and a variety of individuals (including the above-captioned "Individual Defendants") with engaging in a fraudulent scheme concerning the reimbursement of manufacturers' "cents off" coupons.

        Plaintiffs in this civil action are manufacturer victims of the fraudulent scheme. Plaintiffs allege claims under the Federal Racketeer Influenced and Corrupt Organizations

Act ("RICO"), in addition to state law claims for common law fraud, conspiracy to defraud, and unjust enrichment.

After the indictment was issued, IOS was subsequently dismissed from the ongoing criminal case, Case No. 07-CR-057 (E.D. Wis.). Individual Defendants (among others) are still facing charges, and the above-captioned civil matter is currently stayed with respect to Individual Defendants in light of the criminal proceedings.

IOS moves to dismiss for failure to state a claim, for lack of jurisdiction, and for compulsory joinder of certain necessary parties. For the reasons that follow, all of these motions are denied.[1]

Finally, Plaintiffs move for discovery sanctions against IOS. This motion is granted.

**ANALYSIS**

**I.      Personal Jurisdiction**

The RICO statute contains a provision allowing for nationwide service of process. *See* 18 U.S.C. § 1965(a-d). By authorizing nationwide service of process, RICO enables plaintiffs to bring before a single court all members of a nationwide RICO conspiracy. *See Andrade v. Chojnacki*, 934 F. Supp. 817, 831 (S.D. Tex. 1996). In this context, minimum contacts with the forum state are not required so long as the defendant has minimum contacts with the United States. *See, e.g., Dooley v. United Technologies Corp.*, 786 F. Supp. 65, 71 (D.D.C. 1992); *Andrade*, 934 F. Supp. at 831.

---

[1] IOS moves to amend its' motion to dismiss. Plaintiffs oppose this motion, but its opposition devolves into an argument concerning the merits of IOS's motion to dismiss. As the motion to amend merely supplements IOS's arguments, and Plaintiffs were allowed fair opportunity to respond to all of these arguments, IOS's motion to amend is granted.

-2-

The Seventh Circuit has held, in rather conclusory fashion, that § 1965 "contains an explicit grant of nationwide service . . . and the Due Process Clause does not upset Congress's decision." *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 672 (7th Cir. 1987). However, the precise scope of § 1965's jurisdictional grant is unclear, and there is a divergence of opinion among the circuits on this issue. *Compare PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 70-72 (2d Cir. 1998), *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 918 (5th Cir. 1987) and *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986) (§ 1965 does not authorize nationwide service of process) with *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir. 1997) and *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 942 (11th Cir. 1997) (§ 1965 authorizes nationwide service of process).

As noted by the Second Circuit, § 1965(a) grants personal jurisdiction based on "minimum contacts" for at least one defendant, and § 1965(b) provides nationwide service and jurisdiction for "other parties" not residing in the district where the "ends of justice" require. *PT United Can Co.*, 138 F.3d at 71. If this is the correct approach – and the Seventh Circuit actually suggests that it is (*see Lisak*, 834 F.2d at 672) – the Court is not in a position to make such a ruling in the context of IOS's motion to dismiss. In a multi-defendant RICO case, a proper evaluation under § 1965 requires an examination of the contacts and circumstances relating to all of the defendants. As the parties are well aware, Individual Defendants lodged their own objections to jurisdiction, and the consideration of those motions is stayed in light of the ongoing criminal proceedings.

Putting § 1965 aside for the time being, the Court can still evaluate whether the exercise of personal jurisdiction against IOS meets the relevant due process requirements. Jurisdiction is proper if one or more elements of Wisconsin's long-arm statute is satisfied and if the exercise of jurisdiction comports with due process. *See PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1011-12 (E.D. Wis. 2000). Wisconsin's long-arm statute (Wis. Stat. § 801.05) is "intended to reach to the fullest extent allowed under the due process clause." *Harley-Davidson Motor Co. v. Motor Sport, Inc.*, 960 F. Supp. 1386, 1389 (E.D. Wis. 1997).

Under Wisconsin's long-arm statute, jurisdiction is proper over any defendant who is "engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." Wis. Stat. § 801.05(1)(d). A defendant has "substantial and not isolated" contacts with the state if the defendant "'solicit[s], create[s], nurture[s], or maintain[s], whether through personal contacts or long-distance communications, a continuing relationship with anyone in this state.'" *Dreuschel v. Cloeren*, 2006 WI App 190, ¶ 7, 295 Wis. 2d 858, 865, 723 N.W.2d 430 (2006) (quoting *Stauffacher v. Bennett*, 969 F.2d 455, 457 (7th Cir. 1992)). Even if a non-resident defendant "never sets foot in Wisconsin, the existence of a continuing business relationship with someone in Wisconsin is enough to warrant an inference that the defendant benefits from services provided in Wisconsin 'and could therefore be required, as a *quid pro quo*, to submit to the jurisdiction of the state's courts.'" *Johnson Woodward Assocs., Inc. v. Brunton Co.*, 12 F. Supp. 2d 901, 907 (E.D. Wis. 1998) (quoting *Stauffacher*, 969 F. 2d at 457-58).

-4-

IOS is an Indiana LLC with principal offices in El Paso, Texas and Bloomington, Indiana. In its normal course of business, IOS receives cents-off coupons from retail stores where the coupons have been (or should have been) redeemed by consumers. IOS processes coupons for numerous retail stores located in Wisconsin, including Fresh Brands and CVS. These relationships involved the constant exchange of money and coupons over an extended period of time. IOS also directly marketed its services to Wisconsin retailers. Those marketing efforts included personal visits to Wisconsin by IOS representatives.

After receiving coupons from retailers, IOS then sorts the coupons by manufacturer, counts the coupons for each manufacturer, identifies the value, and submits the coupons to the manufacturer or its agent for reimbursement. IOS received reimbursement from numerous Wisconsin-based manufacturers, including Plaintiff S.C. Johnson & Son, Inc. ("S.C. Johnson") (Racine), Plaintiff Kimberly-Clark Global Sales, LLC ("Kimberly-Clark") (Neenah), and Unilever Ice Cream (Green Bay). Such reimbursement involved the exchange millions of coupons and millions of dollars.[2]

By virtue of its dealings with Wisconsin retailers and manufacturers, IOS engaged in substantial, not isolated activities in the State of Wisconsin. Therefore, the requirements of Wisconsin's long-arm statute are met, as are the requirements of due process. *See, e.g., Dorf v. Ron March Co.*, 99 F. Supp. 2d 994, 998 (E.D. Wis. 2000) ("Wisconsin courts presume

---

[2] By way of example, from 2002 through 2006, IOS submitted more than 150,000,000 coupons to S.C. Johnson and was paid more than $175,000,000. (D. 96, Kraemer Aff., ¶¶ 3-4).

that compliance with the Wisconsin long-arm statute satisfies the requirement of due process as well").[3] The Court may exercise personal jurisdiction over IOS.

## II. RICO claims

IOS moves to dismiss Plaintiffs' RICO claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Fed. R. Civ. P. 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This "short and plain statement" must be enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 127 S. Ct. at 1964-65. Factual allegations must "be enough to raise a right to relief above the speculative level." *Id.* at 1965.

Plaintiffs allege two claims under RICO: an "enterprise" claim, and a conspiracy claim. Both claims survive IOS' motion to dismiss.

---

[3] In its' amended motion to dismiss, IOS provides coupon redemption policies that it obtained through discovery from certain Plaintiffs (including J.R. Smuckers, Kellogg's, and Land O'Lakes). These policies contain forum selection clauses directing venue in different jurisdictions. IOS argues that these policies somehow defeat this Court's jurisdiction. This cannot be so, as the policies are all directed towards retailers, i.e., sellers of the manufacturers' products. *See, e.g.,* D. 82, Ex. L (Land O'Lakes Coupon Redemption Policy) ("Redemption of Land O'Lakes coupons indicates acceptance and compliance with this Policy *on the part of the retailer*") (emphasis added). IOS is not a retailer, it is a clearinghouse that collects the coupons and processes them for redemption on behalf of retailers. Therefore, IOS was not a party to any of these coupon redemption policies, so any forum selection clause contained therein cannot defeat the exercise of personal jurisdiction over IOS.

-6-

### A. 18 U.S.C. § 1962(c) (Count I) (RICO Enterprise)

18 U.S.C. § 1962(c) makes it a crime for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." To state a civil action under § 1962(c), Plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Slaney v. Int'l Amateur Athl. Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). IOS's motion focuses on Plaintiffs' "enterprise" allegations, as discussed in the two sections that follow.

#### 1. Association-in-fact

Under RICO, an "association in fact" enterprise is a "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). While a RICO enterprise can be formal or informal, some type of organizational structure is required. *See Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995). A RICO enterprise must have an "ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990). A RICO enterprise is "more than a group of people who get together to commit a 'pattern of racketeering activity,'" *Richmond*, 52 F.3d at 645, so there must be "an organization with a structure and goals separate from the predicate acts themselves." *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991).

Plaintiffs allege that IOS, Individual Defendants (to wit, Thomas Balsiger, Bruce Furr, Steven Furr, Lance Furr, William Babler, Ovidio Enriquez, David Howard, James Currey,

and Howard McKay), a number of coupon brokers, and various unnamed third parties were all part of the RICO enterprise. All of the Individual Defendants, except for Currey, are employees or officers of IOS in some capacity.

Plaintiffs allege that the enterprise was organized to obtain and process coupons legitimately redeemed at retail establishments, as well as to procure other coupons that had not been legitimately redeemed, then to submit the coupons together for reimbursement. "Although the Defendants' scheme was multi-faceted, at its most fundamental level it involved simply augmenting the substantial volumes of properly-redeemed coupons that IOS received with other coupons that IOS acquired, and then fraudulently submitting the entire batch as if all of the coupons had been redeemed legitimately..." (Am. Compl., ¶ 43). The alleged enterprise conducted its affairs from 1997 through 2006.

The Plaintiffs provide detailed allegations regarding the structure and goals of the enterprise. For example, defendant Balsiger "set periodic goals for the volume of illegitimate coupons to be included by IOS in shipments from large retailers and directed others . . . to ensure those goals were met." (Am. Compl., ¶ 49). Defendant Currey, through his firm Curry, Adkins and at the direction of Balsiger, developed computer programs to manage the accounting of and to conceal the enterprise's racketeering activities, including programs "to shift manufacturer chargebacks from non-paying small retailers to stores that were submitting legitimate coupons to IOS." (Am. Compl., ¶ 67).

The Amended Complaint alleges that IOS and its officers solicited coupon brokers (including Abdel Rahim Jebara and Riya Coupon Services, LLC) to acquire coupons. In

turn, the coupon brokers "submitted mass cut and other illegitimate coupons to IOS as coupons supposedly redeemed at . . . small retail establishments." (Am. Compl., ¶ 48). Finally, defendants Bruce Furr, Steve Furr, and Balsiger concealed the activities of the enterprise by reassuring IOS's retail clients that there was no wrongdoing and threatening others who might disclose the enterprise's activities. (Am. Compl., ¶¶ 63-66).

These allegations easily state an "enterprise" claim under RICO. Plaintiffs' allegations demonstrate that this association-in-fact had a structured hierarchy. The enterprise set goals and established a system to ensure that those goals were met. Stated another way, even if the predicate acts of racketeering activity (wire fraud and mail fraud) were "removed from the equation," it is apparent that the enterprise "would still exist." *Starfish Investment Corp. v. Hansen*, 370 F. Supp. 2d 759, 770 (N.D. Ill. 2005). In that respect, the alleged enterprise is clearly "something more than a group of people who allegedly got together to engage in RICO activities." *Id.*

### 2. Separateness

Liability under § 1962(c) depends upon a showing that two distinct entities exist: (1) a "person;" and (2) an "enterprise" that is not simply the same "person" referred to by a different name. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Stated another way, Plaintiffs must show that a person, here the defendant (IOS),[4] "conducted or participated in the conduct of the '*enterprise's* affairs' not just [its] *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original). "The

---

[4] A person need not be a natural person, so IOS is a person within the meaning of RICO. *See* 18 U.S.C. § 1961(3).

requirement that a RICO defendant have engaged in the enterprise's affairs rather than just its own is simply another reference to the fact that a RICO defendant must be distinct from the alleged enterprise." *Chen v. Mayflower Transit, Inc.*, 315 F. Supp. 2d 886, 906 (N.D. Ill. 2004).

IOS argues that the alleged enterprise is one and the same with itself, and therefore the enterprise is not distinct from IOS as a RICO "person." According to IOS, the allegations of the complaint merely describe the day-to-day functions of IOS acting through its employees (including the Individual Defendants), its agents, and other third parties. IOS claims that the "nub of the complaint is that [the corporate defendant] operates *itself* unlawfully," and the complaint does not allege that IOS "has infiltrated, taken over, manipulated, disrupted, or suborned a distinct entity or even a distinct association in fact." *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004) (emphasis in original).

As discussed above, the alleged enterprise extends beyond IOS and its employees or officers to encompass third-party coupon brokers and an outside consultant (Currey). IOS still insists that this is not enough based upon *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997). In *Fitzgerald*, the alleged enterprise involved Chrysler Corporation and its car dealerships. As alleged in *Fitzgerald*, Chrysler sold extended warranties to its customers through its dealerships, but secretly determined not to provide warranty protection, so that when a consumer would bring its car to the dealership for repairs, Chrysler refused to provide reimbursement. *Fitzgerald* held that this arrangement did not constitute an enterprise under RICO:

-10-

> where a large, reputable manufacturer deals with its dealers and other agents in the *ordinary way*, so that their role in the manufacturer's illegal acts is *entirely incidental*, differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the manufacturer plus its dealers and other agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the [RICO] statute.

116 F.3d at 228 (emphases added).

In the instant case, taking the allegations at face value, IOS did not deal with the third-party coupon brokers in the "ordinary way." IOS (and the Individual Defendants) specifically asked for non-redeemed coupons from the coupon brokers so it could fraudulently submit them for reimbursement. Nor did it deal with Currey, and his third-party consulting firm, in the ordinary way, by asking for a computer program to help conceal fraudulent activities. And these dealings were not incidental. The roles of Currey and the coupon brokers, respectively, were essential to the structure and operation of the alleged enterprise. This is in sharp contrast to the dealers in Chrysler, who were kept in the dark about Chrysler's fraudulent intentions.

*Fitzgerald* recognized the possibility that a "manufacturer could use its dealers or other agents or affiliates in such a way as to bring about the sort of abuse at which RICO is aimed, in which event it might be possible to characterize the assemblage as a RICO enterprise." 116 F.3d at 228. When, as here, a RICO person "and the other alleged participants in the enterprise are legally distinct entities and each played a distinct role within the purported scheme," an enterprise consisting of a corporation and its agents can exist. *See*

-11-

*Chen v. Mayflower Transit, Inc.*, 159 F. Supp. 2d 1103, 1109 (N.D. Ill. 2001) (citing *Fitzgerald*).

Finally, IOS also argues that the complaint fails to allege that it conducted or participated in the affairs of the enterprise, as opposed to its own affairs. *See Reves*, 507 U.S. at 185. This is merely a variation of the foregoing "separateness" argument. The complaint alleges that IOS was involved in the unlawful conduct of the enterprise, which was separate from the normal, day-to-day functioning of IOS's legitimate coupon processing business.

### B.    18 U.S.C. § 1962(d) (Count II) (Conspiracy)

To state a RICO conspiracy claim under 18 U.S.C. § 1962(d), Plaintiffs must allege that (1) each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. *See Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 784 (7th Cir. 1999). "Section 1962(d)'s target, like that of all provisions prohibiting conspiracies, is the agreement to violate RICO's substantive provisions, not the actual violations themselves." *Schiffels v. Kemper Fin. Servs.*, 978 F.2d 344, 348 (7th Cir. 1992).

IOS's agreement to form an enterprise and to the commission of predicate acts (i.e., wire and mail fraud) in furtherance of the enterprise can be inferred from the allegations in the amended complaint. This is sufficient to state a conspiracy claim under RICO. *See, e.g., Goren v. New Vision Int'l Inc.*, 156 F.3d 721, 733 (conspiracy claim under RICO must contain supportive factual allegations describing the general composition of the conspiracy,

some or all of its broad objectives, and the defendant's general role in the conspiracy); *see also Vega v. Contract Cleaning Maint., Inc.*, No. 03 C 9130, 2004 WL 2358274 at *16 (N.D. Ill.) ("at a minimum Plaintiffs must allege facts from which one can infer each Defendant's agreement to violate RICO").[5]

### C. Fraud allegations

Fed. R. Civ. P. 9(b)'s heightened pleading standards are also applicable to allegations of fraud in a civil RICO complaint. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Rule 9(b) provides that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A RICO plaintiff "must, at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). To meet the requirements of Rule 9(b), the complaint must plead "the 'who, what, when, and where' of the alleged fraud." *Uni\*Quality Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

Plaintiffs' fraud allegations meet the heightened pleading standards under Rule 9(b). Plaintiffs allege that the fraudulent communications, in which IOS misrepresented the volume of properly redeemed coupons, took place repeatedly and continuously between 1997 and 2006. By way of example, Plaintiffs' allegations detail five different fraudulent invoices for three different Plaintiffs. (Am. Compl., ¶ 62 A-C). Plaintiffs are not required to plead

---

[5] For many of the same reasons, Plaintiffs' common law conspiracy claim survives IOS's motion to dismiss. IOS also argues that the intra-corporate conspiracy doctrine bars the common law conspiracy claim, *see Brew City Redevelopment Group, LLC v. Ferchill Group*, 2006 WI 128, ¶¶ 46-50, 297 Wis. 2d 606, 629-31, 724 N.W.2d 879, 891-92, but as discussed above, the alleged conspiracy reaches beyond IOS and its officers.

-13-

every single invoice, especially in a case such as this which alleges countless fraudulent transactions over an extended period of time. *See United States ex rel. Tucker v. Nayak*, No. 06-cv-662-JPG, 2008 WL 140948 at *4 (S.D. Ill.) ("[W]hen a complaint alleges numerous instances of fraud over a multi-year period . . . it would be both impractical and inefficient to require detailed allegations of the who, what, when, where and how of every single submission of a false claim"); *Fujisawa Pharmaceutical Co. v. Kapoor*, 814 F. Supp. 720, 726 (N.D. Ill. 1993) ("Read together, [Rules 8 and 9(b)] require that the time, place and contents of fraud be plead, but the complainant need not plead evidence. Further, where fraud allegedly occurred over a period of time, the requirements of Rule 9(b) are less stringently applied").

### III. Subject Matter Jurisdiction

The Court recognizes that Plaintiffs amended their pleadings in a manner that destroyed diversity jurisdiction. (D. 88). Since the amended complaint states a claim under RICO (at least with respect to IOS), the Court has original jurisdiction over those claims pursuant to 28 U.S.C. § 1331. The Court may also exercise supplemental jurisdiction over the state law claims, because they are part of the same case or controversy as the RICO claims. *See* 28 U.S.C. § 1367(a).

### IV. Compulsory Joinder

IOS seeks compulsory joinder of two other coupon clearinghouses, NCH Promotional Services ("NCH") and Carolina Manufacturer's Service, Inc. ("CMS"). NCH and CMS are coupon redemption agents for manufacturers. In other words, NCH and CMS act as

-14-

middlemen between a company like IOS and various manufacturers. Because the vast majority of IOS's coupon processing is conducted through NCH and CMS,[6] IOS argues that they are necessary and indispensable parties.

Under Rule 19(a), a party is considered "necessary" if one of the following conditions is met: (1) in that person's absence, the court cannot accord complete relief among existing parties; (2) the litigation will have a direct and immediate impact on the interests of the absent party; or (3) adjudication without the absent party leaves an existing party subject to a substantial risk of inconsistent obligations or multiple liability. *See* Fed. R. Civ. P. 19(a)(1)(A), (B)(i)-(ii); *Scottsdale Ins. Co. v. Subscriptions Plus, Inc.*, 195 F.R.D. 640, 645-46 (W.D. Wis. 2000). None of these factors are met in the instant case.

First, the presence of NCH and CMS is not necessary to afford complete relief between Plaintiffs and IOS. IOS cites its contractual arrangements with NCH and CMS, but those contractual rights and obligations have no bearing on Plaintiffs' claims against IOS. Obviously, Plaintiffs were not parties to those contracts. *See, e.g., Cleveland-Cliffs Iron Co. v. Chicago & North Western Transp. Co.*, 581 F. Supp. 1144, 1155 (W.D. Mich. 1984) (complete relief refers to relief as between persons already parties, not as between party and absent person whose joinder is sought).

Second, the underlying litigation will not impact the interests of NCH or CMS. Whether IOS is found liable or not will have no bearing on any of the legal interests of NCH or CMS as absent parties. *See, e.g., United States v. Nye County, Nev.*, 951 F. Supp. 1502,

---

[6] IOS claims that only 7% of its business is conducted directly with manufacturers, the rest is conducted through redemption agents like NCH and CMS.

1513 (D. Nev. 1996) (in order for joinder of absent party to action to be necessary, interest of absent party must be legally protected interest, and not merely financial interest or interest for convenience).

Finally, adjudication in the absence of NCH and/or CMS will not subject IOS to a substantial risk of inconsistent obligations or multiple liability. IOS argues that if it is found liable on Plaintiffs' claims, it logically follows that IOS would be liable under its contracts with NCH and/or CMS (the opposite would also be true). Apparently, joinder would ensure "consistency" with the outcome of the underlying litigation. However, Rule 19 requires joinder to avoid inconsistent *obligations*, not inconsistent results. "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998). Despite its contractual arrangements with NCH and CMS, IOS is not at risk of inconsistent obligations, as would require joinder under Rule 19.

## V.   Discovery Sanctions

After IOS challenged personal jurisdiction, Plaintiffs noticed IOS for a Rule 30(b)(6) deposition. The notice listed a variety of topics for inquiry. IOS moved for a protective order, claiming that some of the topics represented Plaintiffs' efforts to "jump the gun" on merits discovery. The Court denied IOS's motion, stating as follows: "The Court reviewed the topics for inquiry and finds that all of the topics are arguably relevant to issues relating

-16-

to personal jurisdiction. IOS can object or instruct its client not to respond *if a particular inquiry at the deposition crosses into merits discovery*." (D. 83) (Emphasis added).

IOS produced Wenona Freeman as its Rule 30(b)(6) witness. However, as reflected in the deposition transcript, IOS's counsel specifically instructed Ms. Freeman not to prepare answers on some of the noticed topics for inquiry. Ms. Freeman was instructed "not to bother" informing herself on Topic 4. (D. 86-2, Ex. A at 76). She was told "not to look into" Topic 11. (*Id.* at 77). She was also "instructed by her counsel that Topic 7 didn't relate to jurisdictional matters, but related to merits matters, so if she followed the instruction of counsel, she didn't do anything to prepare for Paragraph 7." (*Id.* at 95).

This conduct goes far beyond the Court's instructions when it denied IOS's motion for a protective order. On the contrary, it is a blatant disregard of the Court's specific directive that *all* of the topics were arguably relevant to the issue of personal jurisdiction. Obviously, the Court did not contemplate blanket protection from all questions relating to a specific topic for inquiry. That was the relief requested in IOS's motion for a protective order, and the Court denied that request. IOS's counsel simply continued to disagree with the Court's ruling: "I don't believe Paragraph 7 is arguably relevant, so I instruct my client not to answer questions about Paragraph 7." (*Id.* at 96).

Rule 37(b)(2)(A) provides for sanctions when a party or a party's officer "fails to obey an order to provide or permit discovery." Plaintiffs ask that IOS's objection to personal jurisdiction be stricken. *See* Fed. R. Civ. P. Rule 37(b)(2)(A)(ii),(iii). The Court already concluded that IOS is subject to personal jurisdiction in this Court despite the conduct of

-17-

opposing counsel. But Plaintiffs' burden was obviously made more difficult by opposing counsel's failure to comply with the Court's order. Therefore, the Court will impose sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(C). Both the client and the attorney must pay "the reasonable expenses, including attorney's fees, caused by the failure" to comply with the Court's order.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. IOS's motion to amend/correct its motion to dismiss [D. 80] is **GRANTED**;

2. IOS's motion to dismiss [D. 42] is **DENIED**;

3. IOS's motion for compulsory joinder [D. 80] is **DENIED**;

4. Plaintiffs' motion for discovery sanctions [D. 84] is **GRANTED**; and

5. Pursuant to paragraph 12 of the parties' "Stipulation Concerning Stay with Respect to Individual Defendants" (D. 93, 101), the Court presumes that the parties will now move for a stay with regard to this entire case, pending the resolution of the ongoing criminal matter (Case No. 07-CR-057 (E.D. Wis.)). Unless and until the Court hears otherwise, this matter is **STAYED**. The parties should still submit an appropriate stipulation or motion as soon as practicable.

Dated at Milwaukee, Wisconsin, this 30th day of April, 2008.

**SO ORDERED,**

s/ Rudolph T. Randa
**HON. RUDOLPH T. RANDA
Chief Judge**